TULSA COUNTY et al. v. ST. JOHN'S
HOSPITAL.

No. 33144.   April 6, 1948.

*191 P. 2d 983.*

Elmer W. Adams, Co. Atty., and Hugh Webster, Asst. Co. Atty., both of Tulsa, for plaintiffs in error.

Milsten, Milsten, Johnston & Morehead, of Tulsa, for defendant in error.

Julian B. Fite, of Muskogee, amicus curiae.

PER CURIAM. This appeal presents the question of whether property located in Tulsa county, owned, used, and operated by the Sisters of the Sorrowful Mother, a corporation domesticated under the laws of the State of Oklahoma, is exempt from ad valorem taxation.

For the year 1946, the county assessor of Tulsa county placed upon the tax assessment rolls of said county a tract of land consisting of 8.75 acres, together with the improvements thereon, and personal property, owned by the Sisters of the Sorrowful Mother, a corporation. The assessed value of the land, the improvements, and the personal property was fixed at $36,750, $1,900,000, and $100,000, respectively.

The corporation filed its protest before the county board of equalization, contending that under the Constitution of the State of Oklahoma, and particularly section 6, art. 10, said property is not taxable in that it is, and at all times has been, used exclusively for religious and charitable purposes.

Upon hearing before the county board of equalization, the protest was denied, but the assessed value of the property was reduced to $31,590 for the land, and $594,180 for the improvements. The personal property assessment was not changed by the board.

The corporation appealed to the district court on both questions of law and fact. The district court found that there had been no change in the method of operation of the property or the use thereof since the same question was before this court in Board of County Commissioners of Tulsa County v. Sisters of the Sorrowful Mother, 141 Okla.

32, 283 P. 984. The court specifically found that the property involved "is being used by the appellant exclusively for religious, charitable and educational purposes and that no part of the income from the operation of said property or improvements thereon inures to the benefit of any private stockholder or individual, and that said property and improvements are not operated or maintained for profit, gain, or private advantage".

It was adjudged that the property, improvements, and personalty were improperly placed upon the tax rolls and ordered stricken provoking this appeal by the county and board of equalization.

It is contended that the evidence shows that the property involved was not used exclusively for charitable purposes and therefore is not exempt from taxation. Sec. 6, art. 10, Constitution.

In addition to the hospital operated by the Sisters of the Sorrowful Mother, there is located on the land a chapel, used exclusively for religious worship, and a school for nurses.

It is urged the county board of equalization exempted so much of the property as is used for nurses' training school and for the chapel; it is asserted, therefore, that the educational and religious phases of the exemption have been eliminated, leaving only the question of charitable exemptions. The record does not support the assertion. The record does not show that the county board of equalization exempted any part of the property or reduced the value thereof on account of the use of a part of the property for religious worship or for the nurses' training school.

The trial court found, and counsel for the county admitted, that the factual situation presented in this case is virtually the same as was shown in Board of County Com'rs v. Sisters of Sorrowful Mother, supra. Therein this court affirmed the judgment of the trial court exempting the property in its entirety from ad valorem taxa-

tion. Section 6, art. 10 of the Constitution exempts from taxation "all property used exclusively for religious and charitable purposes". There is a further proviso that all property not therein specified, which was then exempt from taxation under the laws of the Territory of Oklahoma, should be exempt from taxation until otherwise provided by law.

The applicable territorial statutes then in force, section 5914, Wilson's Rev. Stat. 1903, exempted from taxation:

"Fifth. The grounds and buildings of library, scientific, educational, benevolent and religious institutions, colleges or societies, devoted solely to the appropriate objects of these institutions, not exceeding ten acres in extent, and not leased or otherwise used with a view to pecuniary profit.

"Sixth. The books, papers, furniture, scientific or other apparatus pertaining to the above institutions and used solely for the purpose above contemplated, and the like property of students in any such institutions used for the purpose of their education."

In Board of Commissioners v. Sisters of Sorrowful Mother, supra, we said:

"It is apparent that property of this character was not subject to taxation under the laws of the Territory of Oklahoma."

The statute referred to was repealed, and in lieu thereof, Title 68, ch. 1-a, sec. 2, S.L. 1941 (68 O.S.A. §15.2) was enacted.

But the holding of this court that the property involved was not subject to taxation under the laws of the Territory of Oklahoma does not necessarily mean that it was not also exempt from taxation under section 6, art. 10 of the Constitution. The section specifies a number of classes of property as exempt from taxation. These classes are all property used for free libraries, free museums, public cemeteries, and property used exclusively for schools and colleges, and all property used

exclusively for religious and charitable purposes. Other classes of property are also named. The section recognizes that under statute of the Territory, property other than that particularly specified was exempt. With reference thereto, the constitutional exemption provides that all property not above specified, exempt from taxation under the laws of the Territory of Oklahoma, should be exempt from taxation until otherwise provided by law.

Authority was constitutionally reserved for the Legislature, by subsequent laws, to remove from the exemption all such property then exempt under the statute of the Territory other than the property specifically classified and mentioned in the constitutional provision. But the Legislature may not withdraw the exemption as to the classes of property so specifically mentioned. That is to say that the Legislature may not withdraw from the exemption property used for free public libraries, etc., including "all property used exclusively for religious and charitable purposes". Those classes of property must remain exempt unless by amendment of the Constitution.

It is clear and uncontradicted that a part of the property here involved is and has been used exclusively for religious and school purposes. Such property is that part of the property used as a chapel for religious worship and that part used for the school for nurses. The question then remains whether the property used in conducting the hospital is and has been used exclusively for charitable purposes.

The general rule is that where a hospital is operated by a corporation having no capital stock and no salary, wages, or pecuniary profits of whatever kind may be declared or paid to any of its members, and where patients are admitted without regard to race, color, or religion and without regard to their ability to pay, such hospital is a public, charitable institution. 10 Am. Jur. 685; 14 C.J.S. 422, 423.

In the case of Farmers' Union Hospital Ass'n of Elk City, 190 Okla. 661, 126 P. 2d 244, this court said:

"There is a wealth of these cases, and a variety of schemes of organizations and methods of operation, and many are held exempt and others not. In all of them there is one factor the presence or absence of which means almost more than anything else in determining the issue. That is this: Are the doors of the hospital open to all, poor patients and pay patients alike? If the answer is yes, it is a charitable hospital and its property is entitled to the exemption from taxation provided; if the answer is no, it is not a charitable hospital and is not entitled to the exemption."

Many cases are cited in support of that statement, among which is Tulsa County v. Sisters of the Sorrowful Mother, supra.

The rule is aptly stated in Nuns, etc., v. Younkin et al. (Kan.) 235 P. 869, as follows:

"When an institution is incorporated for benevolent purposes without capital stock, and no dividends are declared or paid, and conducts a hospital, and all the earnings of the hospital from pay patients, gifts, devises, bequests, or whatever source are used in the maintenance, extension, and improvement of the hospital, and which admits patients without regard to race, creed, or wealth, it is uniformly held that such hospital is conducted exclusively for charitable purposes. . . .

"The fact that it charges and receives pay for patients able to pay does not detract from the charitable nature of the service rendered. . . .

". . . Neither does the fact that the hospital has been able to increase the value of the plant from money received from pay patients and donations detract from its charitable purposes. . . .

"If these incomes from pay patients and donations are used for the purpose of caring for or relieving the sick or dis-

abled and increasing the facility of the institution for that purpose, and are not used for the purpose of declaring dividends or the financial profit (other than the paying of necessary operating expenses) of those connected with or having charge of the institution, such use is simply an extended use for charitable purposes."

To the same effect is Scripps Mem. Hospital v. California Emp. Comm. (Cal.) 151 P. 2d 109; Dingwell v. Seymour, 91 Cal. App. 483, 267 P. 327. Many other cases to the same effect might be cited; and our attention is called to no case holding to the contrary.

The stipulated facts and uncontradicted evidence bring the St. John's Hospital clearly within the rules above stated and the property of said corporation, here involved, is clearly exempt from taxation under section 6, art. 10, Constitution; and it is not and may not be made taxable under any subsequent act of the Legislature so long as it may be operated as at present.

Having arrived at this conclusion on the foregoing issues, it is unnecessary to comment upon other argument made in support of this conclusion.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, GIBSON, and LUTTRELL, JJ., concur. RILEY, J., concurs specially.

---

RILEY, J. (concurring specially). As I am opposed to rule unrestricted by law, based on force, I must, in reason, state the basis of opinion to govern taxation or exemption from taxation of hospitals, privately owned.

Board of Com'rs, Tulsa County, v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984, determined this hospital to be tax exempt. The matter of taxation ought to be by some agency

of state government finally settled. This is a matter publici juris. If a property is classified and taxed, it shall not thereafter have a legislative tax exemption. Sec. 50, art. 5, Const.

All property should equitably bear the burden of government. 88 Okla. 156, 212 P. 424. Yet the power to tax is legislative and there must be a distinct exercise of legislative authority for each levy. State v. Shamblin, 185 Okla. 126, 90 P. 2d 1053. But see section 7302, R.L. 1910; 68 O.S. 1941 §15.1; Assessment of Price, 88 Okla. 156, 212 P. 424. The reason is that government defends and protects property, if need be, with the lives of the citizenship. Robert E. Lee, after divesting himself of ownership in human chattels, elected to cast his lot with the Old Dominion for the purpose of resisting the taking of private property for public use without just compensation.

By the constitutional exemption from taxation, it is contemplated that some institutions are of such value to the state that when, exclusively, use is made of property, as for example, for the "religious" or "charitable" purpose, such property will be totally exempt. (Sec. 6, art. 10, Const. of Okla.). Whether founding fathers or a majority of the citizenship who adopted the Constitution wrought well, or otherwise, is of no concern to the courts. The personnel of courts is sworn to uphold and defend the Constitutions, State and Federal.

According to prior judgments of this court, by which facts presented in the case at bar are to be measured, St. John's Hospital is not exclusively used as a charitable institution, but it does not follow that its property located within this state is taxable.

While the Benedictine Order of Nuns own exclusively the non-profit stock representative of title to St. John's Hospital, and while the Order is a religious and charitable corporation, the use of the profits (derived from patients who pay for services) and the property determine whether the prop-

erty is devoted to a charitable purpose. Within a restrictive sense and according to precedent in tax matters, this property is not used for a charitable purpose. The nuns or sisters receive no pay, as such, but the profits are used for an extension of the hospital facilities. However, the extensions are not shown to be confined within the borders of this state.

In state tax matters, we do not recognize "foreign missions". Therefore, since the extension of the hospital facilities may extend beyond the boundaries of the state, the property is not, to that extent, exclusively devoted to a charitable purpose. Hence, the hospital property is not exempt from taxation as property exclusively used for the charitable purpose.

This is so according to public policy expressed by the Legislature. 68 O.S. 1941 §15.2, subsec. 8. By the terms of the statute an exemption is provided for charitable institutions "organized or chartered" under the laws of this state. The charitable institution in the case at bar is not organized or chartered under the laws of this state, but is organized and chartered under the laws of the State of Wisconsin. It is a foreign corporation doing business in this state.

The requirement for the exemption extended to domestic charitable corporations is limited. The statute reads: "providing the **net income** from such property is used **exclusively within this State for charitable purposes** and no part of such income inures to the benefit of any private stockholder". By the provisions of subsec. 10, supra, "All property of any hospital organized and chartered as a non-profitable or charitable institution under the **laws of this State**", shall have tax exemption, "provided, however, that the net income from such property is used **exclusively within this State for charitable purposes** and no part of such income inures to the benefit of any private stockholder".

The above statute does not apply in the case at bar for two reasons: (1) This corporation is not organized or chartered under the laws of this state; (2) the net income from such property is not used exclusively within this state for charitable purposes.

There is compliance with the third condition of the exemption by which "no part of such income inures to the benefit of any private stockholder". The consequence is that neither the institution nor its property has exemption as a charitable institution.

There is, however, proviso contained in the text of article 10, sec. 6, Constitution. It reads:

"All property not herein specified, now exempt from taxation under the laws of the Territory of Oklahoma, shall be exempt . . . until otherwise provided by law."

As measured by the statute of the Territory of Oklahoma, limited to the area of land upon which a hospital is situated, St. John's Hospital is exempt from ad valorem taxation. It has not otherwise been provided by law except as to an exemption relating to hospital corporations "organized and chartered" as nonprofitable or charitable institutions under the laws of this state. As to all property of hospitals organized and chartered under the laws of other states of foreign jurisdictions, and licensed to do business within this state, 68 O.S. 1941 §15.2 does not apply. Therefore the provisions of the laws of the Territory of Oklahoma exempting hospitals apply, and under those provisions the property of St. John's Hospital located within this state is exempt from ad valorem taxation.

The extended provisions of section 15.1, 68 O.S. 1941, that "All property in this State, whether real or personal (shall be subject to ad valorem taxation) except that which is specifically exempt by law, and **except that which is relieved of ad valorem taxa-**

tion by reason of the payment of an in lieu tax," is not inclusive of the extent that without the specific mention of foreign charitable institutions extending their charity within the boundaries of Oklahoma, St. John's Hospital is to be taxed.

By the terms of section 15.1, supra, there is no specific legislative authority to tax, on an ad valorem basis or otherwise, the property of St. John's Hospital or any hospital similarly situated.

For example, property in and around a producing oil well and used in the production of oil and gas is not subject to ad valorem taxation. This is so because of the "in lieu" provision of statute by which a severance tax is paid on petroleum or gas produced. Hence, the exemption from ad valorem taxation. So the oil derrick, machinery, and casing actually used in the production of nature's products is exempt by the "in lieu" provision of the statute. Query: What of the property, real, personal or mixed, as is exempt, supplies not used but intended for use, or a royalty interest in land, or an oil and gas lease upon which there is no present production? Are these included within the all-embracing terms of section 15.1, supra. "All property in this State, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation" rendered taxable? It is well known that such properties do not bear the burdens of the cost of government. They are neither taxed nor yet have they a specific exemption from the tax. But, according to law, or according to usage and custom, having the effect of law, these things are not taxed.

Yet the landowner's land is taxed. His nonproductive royalty interest is taxed as a part of the land and unless severed from the fee exempt estate and vested by conveyance in another, or unless an oil and gas lease is granted and held by another, taxation is the rule. But the advantage of an exemption is obtained when such interests in land are conveyed.

Although, if such conveyances and grant constitute real estate by virtue of constitutional provision, they may not within the State of Oklahoma be corporately owned unless proper and necessary to the corporate enterprise.

Yet chattels, such as hogs and chickens and personal property of the farmer, are taxed. Moreover, when bread is bought there is a tax on bread. In the opinion of C. J. Hurst, "nor property intended to be used in the future . . . . . but not presently so used" was exempt. Oklahoma County v. Queen City Lodge, 195 Okla. 131, 156 P. 2d 340.

But within specific authority of law to govern the assessor's action, by the same omen and for additional reasons, hospitals within limited areas of land located in Oklahoma, as a result of which from foreign jurisdictions the rich or poor, without regard to race or color, have succor, the hospital property is not taxable.

The authority to assess that property as yet falls within a glittering generality of the law. Scripps Memorial Hospital v. California Employment Comm. (Cal.) 151 P. 2d 109; In re St. Elizabeth's Hospital, 109 Neb. 104, 189 N.W. 981.

The record shows there are 51 Sisters of the Sorrowful Mother, a Catholic organization organized and existing for charitable purposes. These are consecrated to the task of devoting their labors to the public and private service rendered or to be rendered by St. John's Hospital.

Without such services being rendered and devoted in Tulsa county, State of Oklahoma, and if the county of Tulsa, a municipal corporation, or the state were to afford a same or similar hos-

pital labor facility, the cost in salaries would be $108,000 per annum.

This St. John's Hospital was assessed at $725,770. The court should take judicial notice that property generally in Tulsa county and the State of Oklahoma is assessed for taxes at from 1/3 to ½ of its actual cash value estimated at the amount it would bring at voluntary sale. If the 50% ratio is applied, the hospital has a real cash value of $1,451,540. That amount would be required to be accumulated from the citizenship of the municipal subdivision, or the state, by an issuance of bonds bearing interest, or otherwise, and invested in such a hospital facility. If the rate of interest on such bonds or the current value of money were 2½% per annum, interest per annum on such an investment in such hospital facility would amount to $36,288.50, which, when added to the sum required per annum for services of hospital employees, would be the sum of $144,288-.50.

The total sum, in the absence of tax exemption that is sought to be derived per annum from taxes sought to be assessed against St. John's Hospital amounts to only $33,411.55.

Therefore, the county of Tulsa and the citizenship of it may be said to be financially benefited each year, despite the tax exemption and by reason of the existence and operation of St. John's Hospital, in the sum of $110,-877.95.

Wigmore, an authority on the law of evidence, taught that he who makes or applies the rule should know the reason for the rule.

The people, by adopting the constitutional tax exemptive provision as to charitable institutions and extending the exemption by reference to the territorial laws wherein hospitals were particularly mentioned, but reserving permissive authority for a legislative act by which such hospitals might be taxed, made the rule to be applied by this court in this case. The constitutional provision contains words, phrases and clauses by the terms of which the Legislature or the people, by the medium of an initiative petition, may, by a mere statute, transform the constitutional tax exemption provision into a statute levying a tax against all such hospitals when they are not exclusively used for religious and charitable purposes. Whether the people or the Legislature will do so rests within the exercise of their respective discretions. It is the policy of this state to let the people rule. The duty of state officers is to **govern.**